WOMBLE *et al. v.* WALKER *et al.*

(*Jackson,* April Term, 1944.)

Opinion filed May 6, 1944.

CRAIG, DURHAM & CARNEY, of Ripley, for complainants.

L. E. GWINN, of Memphis, and TIPTON & TIPTON, of Covington, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The original bill was filed in this cause seeking the sale for partition of a tract of 744.52 acres of farm land in Lauderdale County, which had been owned at the time of her death in May, 1937, by Mrs. Ellen Walker, who was the mother of the complainant, Mrs. Linnie Walker Womble, and the grandmother of the other two complainants. They based their right to have the sale on the allegation that they were the heirs at law of Mrs. Ellen Walker. The principal defendant, Mark A. Walker, is the son of Mrs. Ellen Walker.

For brevity, on account of the complexity of the subsequent pleadings, the parties will be referred to throughout this opinion according to their original appearances in the Chancery Court.

The defendant answered, resisted the sale for partition, denied that the complainants had any interest in the land, and filed a cross-bill with which he exhibited a written lease containing an option to purchase the land sought

to be partitioned; alleged that he had been a tenant on said land continuously since 1920, until the time of his mother's death in 1937; and asked that his right to exercise the option to purchase be confirmed. The lease, executed in the spring of 1919, ran for a five-year term from January, 1920, and had, according to the allegations of the cross-bill, been renewed for three subsequent five-year terms in 1925, 1930, and 1935, so that the final renewal had not run in May, 1937. Prompt and full payment of the consideration recited in the written lease was further alleged, as was the fact that during the tenancy, defendant had placed permanent improvements on the land to a value of more than $6,000. Defendant therefore prayed (1) that his right to exercise the option to purchase be confirmed by decree, or if such relief should be denied (2) that he be repaid the value of the improvements which he had placed on the land.

The pertinent provisions of the lease are as follows:

"The party of the second part, as rental for said premises, and also as a consideration for the option hereinafter granted, is, during the term of this lease or any renewal thereof, to furnish to the party of the first part, who is his mother, a home with his family, and she is to be treated as a member of his family, and to be furnished with all necessary clothing and other necessities and comforts of life, and such reasonable sums of money as may be necessary for her usual and ordinary personal expenses, including any and all medical bills, and attention in case of illness.

"The party of the second part has heretofore, with the approval of the party of the first part, made certain improvements upon the lands hereinabove described, and is from time to time hereafter, at his judgment, discre-

tion and option, to make such additional improvements as to him may seem proper, for increasing the value of said property and preserving and maintaining same. It is understood that if party of the second part shall not purchase said property in accordance with the option hereinafter granted, that the reasonable cost to the party of the second part of all such additions, improvements or betterments, in the way of clearing lands, building fences, constructing tenant houses, farm buildings, constructing ponds, or any other improvements, shall be a charge against my estate, to be paid to him by my administrator after my death, or to be repaid to him out of the proceeds of the sale of the place should I during my lifetime sell to some other person other than the party of the second part.

"For the considerations hereinabove recited the party of the first part has granted and does hereby grant and give unto the party of the second part an unconditional right and option to purchase the property hereinabove described, with all improvements, easements and appurtenances thereunto belonging, at any time from the date hereof, to the end of this lease or any renewal hereof, at and for the consideration of Ten Thousand ($10,000) Dollars, upon terms as follows:" (The terms are then stated.)

The complainants answered the cross-bill, denied the renewal of the original written lease in 1925 or subsequently; denied consideration for such renewals or extensions; and denied that such renewals had been in writing and therefore specially pleaded and relied upon the Statute of Frauds, Code 1932, sec. 7831, subd. 4, in bar of the defendant's right to exercise the option to purchase.

On the hearing before him, the Chancellor sustained the plea of the Statute of Frauds in bar of the exercise of the option to purchase and found that during the period from 1925 to 1937, the defendant was merely holding over on the land as a tenant at will from year to year. There is no controversy on the facts as the deposition of the defendant is the only evidence in the record except a stipulation on certain formal matters.

The Chancellor dismissed the cross-bill and decreed that on Mrs. Walker's death the title to the land had vested in the devisees under her will; that her estate was insolvent, and that the clerk and master should ascertain and report the value of the improvements made on the land by the defendant, as well as the rental value of the land since the death of Mrs. Walker, and that the land should be sold.

The will of Mrs. Walker had been contested in the Circuit Court by the complainants and while the Chancery cause was pending, had been established as a valid will. The complainant, Mrs. Linnie Walker Womble, not being one of the beneficiaries under the will, after its establishment, had no further interest in the litigation.

To so much of the decree of the Chancellor as adjudged that the option to purchase contained in the original lease was invalid and that he was merely holding over as a tenant at will, the defendant, Mark A. Walker, prayed, perfected and was granted an appeal to the Court of Appeals. That court reversed the decree of the Chancellor holding that the original lease had been validly renewed for three subsequent terms of five years; that the option to purchase contained in the original lease was not violative of the Statute of Frauds, but in full force and effect at the time of Mrs. Walker's death; and that therefore

defendant might exercise the option and acquire the land, to which end the cause was remanded.

Because the courts below had differed in their findings, and because the record presented matters of first impression in this State, we granted the petitions for *certiorari* which were filed by both parties; have heard argument and the case is before us for disposition. The petition filed by the complainants presents two assignments of error:

First: That the Court of Appeals erred "in assuming, and apparently holding, that the original lease contract provided for a renewal and gave the lessee a right of renewal or extension, and in stating, 'It was also provided that any renewal of the contract, both as to the lease and to the option, should be upon the same terms as the original contract.'"

■■ It seems to us immaterial whether the contract gave the express right of renewal, since this suit is not by one original party against the other to enforce an executory right of renewal. It is admitted that the original parties so construed the contract as to give the right of renewal and acting under such construction, did renew or extend the contract in identical terms as therein expressly provided for such renewals, for three successive periods of five years each. We think the situation forces this court to the application of the doctrine of practical interpretation under which the parties leave no room for judicial construction, but make their own construction final and binding upon us. This doctrine, many times applied since the opinion of *State ex rel.* v. *Vanderbilt University*, 129 Tenn., 279, 164 S. W., 1151, was in a recent opinion well stated, to be:

" 'The interpretation given by the parties themselves to the contract as shown by their acts will be adopted

by the Court, and to this end not only the acts, but the declarations of the parties may be considered.' 8 Williston on Contracts, par. 623, citing many authorities, including *State* v. *Board of Trust (of Vanderbilt University)*, 129 Tenn., 279, 329, 164 S. W., 1151.'' *Sherman* v. *Cate*, 159 Tenn., 69, 72, 16 S. W. (2d), 25, 26; *Board of Education of Viola Normal School* v. *Board of Education of Warren County*, 160 Tenn., 351, 354, 24 S. W. (2d), 889.

Such renewals were made on express provisions therefor in the original contract:—(a) that the consideration for the lease and the option ''during the term of this lease *or any renewal thereof*,'' shall be the same; (b) that the lessee shall have the right to purchase the leased premises during ''the term of this lease *or any renewal thereof*;'' (c) that for the considerations hereinabove recited, the lessor has given the lessee ''an unconditional right and option to purchase . . . to the end of this lease *or any renewal hereof*, at and for the consideration Ten Thousand ($10,000) Dollars, upon terms as follows:'' The conclusion is inescapable that ''renewal'' was in the minds of the parties at the time they entered into the original contract, and that provision was made for such renewal, and the lease renewed as provided. We find no merit in the first assignment of error and it is overruled.

Complainants' second assignment of error is somewhat differently stated in the petition for *certiorari* and in the formal assignment of error.

In the former it is thus stated:

''The Court of Appeals in its opinion at page 11 did find: 'Said oral agreements were not in writing and therefore did not meet the requirements of the Statute of Frauds'—yet the Court of Appeals held that the successive oral renewals were 'parol extensions of the option

to purchase the land, with respect to the time of the acceptance of it,' and were valid, despite the Statute of Frauds, and upon such holding reversed the decree of the Chancellor and remanded the case with direction to permit cross-complainant to exercise an option to purchase.''

In the latter it is thus stated:

''The Court of Appeals erred in holding that there was or could be an oral renewal or extension of the lease and option which would be valid, despite the Statute of Frauds, and that the renewal of the lease and option was a mere modification of the original contract in respect to time or method of performance which was valid, despite plea of Statute of Frauds.''

We reiterate what we said of the first assignment. Neither the pleadings nor the proof raise the question of the right of either party to enforce an executory renewal of a lease. The only question before us is whether the defendant has the right to exercise an option to purchase, clearly given him in legal form in the original contract.

It must be borne in mind that the written agreement contained two contracts; (1) the lease; (2) the option to purchase. They were separate but not severable because they were supported by an unseparated consideration.

It is admitted that for 12 years after the expiration of the first five-year term defendant was in continuous use and occupancy of the premises leased in the original contract, and that he fully paid the same consideration during the additional terms that he had agreed to pay under the written lease.

The only question is whether under the terms of the original lease, bearing in mind the acts and relation of the parties, the undisputed facts make out a renewal of the original lease or a tenure by defendant of a different

sort. That the whole contract, lease and option to purchase, was orally extended prior to the expiration of each five-year term, is the undisputed evidence as is the uninterrupted tenure from the original entry by defendant to the date of his attempted exercise of the option.

It is admitted that the option as written in the original contract, fulfills all requirements of the Statute of Frauds, but it is insisted that the attempted oral extension renders it unenforcible under that Act. That because there was no right to renew expressed in the original contract, that the attempted oral extensions were in fact, attempts to make oral contracts for successive five-year periods from the termination of the written contract.

█ With this we cannot agree since every term of the original contract was renewed, continued or extended, and every term of the option essential to conformity with the Statute of Frauds was expressly provided to apply to renewals as above quoted, and was therefore in writing until the attempted exercise of the option in 1937. *Sheid* v. *Stamps*, 34 Tenn., 172, 176.

We think provision for renewal was clearly and unequivocally made by the terms of the original lease and that the parties' mutual assent to renewal prior to the expiration of each five-year term put those provisions into effect. The defendant had a right to exercise the option for so long as the relation of landlord and tenant existed under the original lease or an extension of it.

█ Thus the decision of the proper construction of the word "renewal" in the original contract is really determinative. Complainant suggests no reason why in a contract between a mother and her son, a narrow technical sense should be accorded the word "renewal," and there is authority only for the opposite in our reported cases;

*Carhart* v. *White Mantel & Tile Co.*, *infra.* We find our idea of the proper construction well stated by the able opinion of the Court of Appeals, where many authorities are cited in support of the more liberal and reasonable view:

"Generally speaking, the word 'renewal' with reference to a lease implies the execution of a new lease; but the word is not a technical one and is frequently used as synonymous with 'extension,' and the tendency of the courts seems to be to disregard any distinction between them. 32 Am. Jur., 'Landlord & Tenant,' sec. 956; 35 C. J., 'Landlord & Tenant,' sec. 175.

"And our supreme court in *Carhart* v. *White* [*Mantel & Tile Co.*], 122 Tenn., 455, 461, 123 S. W., 747 [19], Ann. Cas., 396, quotes with approval from Underhill on Landlord & Tenant (ed. 1909), sec. 803, as follows:

"'So where a lease gives a lessee a renewal at his election, and he elects to continue, a present demise is created, which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease shall be executed. *In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease.* . . . The reason for the presumption is the fact that the making of a new lease would involve trouble and expense, which should be avoided by the courts if possible unless it is very clear that the parties have previously agreed to incur such trouble and expense. For, if the new lease, as is always the case, when executed, is but a substitute for, and a re-execution of, the old lease, it is in no wise more efficacious or obligatory, nor does it confer any greater rights than the old.'

"There are numerous cases in which the words 're-newal' and 'extension' are regarded as synonymous and this is especially the case where 'the parties themselves have treated the extension as the equivalent of a renewal. For instance, in *Kozy Theatre Co.* v. *Love* [191 Ky., 595], 231 S. W., 249, 251, it is said that covenant to renew, in a lease 'will be construed according to its terms if they are certain; but if there is any doubt of what was meant by what was said in the lease, the action of the parties before a controversy arose may be examined to ascertain their own interpretation of its meaning, since they, better than anybody else knew what they meant by what they said:'

"And in *Ackerman* v. *Loforese* [111 Conn., 700], 151 A., 159, 160, the court, while noting the technical differ-ence between the words 'renewal' and 'extension' in leases, says:

" 'But it is recognized that the technical difference may be controlled by the intention of the parties as manifested by the entire lease or by their practical construction of their contract, as by conduct before the controversy arose, whereby the privilege may be construed as one for an extension of the term, though the language employed, in a strict technical sense, may signify renewal.'

"And in *Maryland Theatrical Corporation* v. *Mana-yunk Trust Company*, 157 Md., 602, 146 A., 805, 810, it is said that

" 'The words "renew" or "renewal" are not words of art, and have no legal or technical signification.'

"And it was held that whether the word 'renewal' was to be construed as an extension of the original term depended upon the intention of the parties to be gathered from the language of the lease, 'the purpose to be ac-

complished, and all the surrounding circumstances." (Emphasis ours.)

Since, therefore, we hold that the word "renewal" as used in the written contract is synonymous with "extension," it must follow that when defendant undertook to exercise his option he did so as a matter of right under a renewal of the original lease. The option there set out in writing is full, complete and specific, signed by the contracting parties and subject to no objection under the Statute of Frauds.

"It is the generally accepted rule that a covenant for the extension of the term of a lease, at the option of the lessee, operates, upon the exercise of the privilege, as a present demise for the full term to which it may be extended, and not as a demise merely for the shorter period with the privilege of a new lease for the extended term. 16 R. C. L., 885, sec. 389, 35 C. J., 1026, sec. 160; Tiffany on Landlord and Tenant, 1514 *et seq.*, secs. 218, 219; McAdam on Landlord and Tenant (5th Ed.), 710, 711, 726; Jones on Landlord and Tenant, sec. 337; Underhill on Landlord and Tenant, sec. 803 *et seq.*" *Murray* v. *Odman*, 1 Wash. (2d), 481, 96 P. (2d), 489, 491 (4).

We do not by this opinion change the rules of law laid down in *Frierson* v. *Gant*, 23 Tenn. App., 428, 134 S. W. (2d), 193; nor *Southern Style Shops, Inc.*, v. *Mann*, 157 Tenn., 1, 4 S. W. (2d), 959, but as to these two opinions relied on strongly by complainants, hold merely that the terms of the leases and other facts in these cases are so different from those of the one before us, as to furnish no similarity for guidance.

It results that all assignments of error in complainants' petition are overruled and since petition for *certiorari* of

defendants was filed conditionally upon our failure to affirm, there is no need to consider them. The decree of the Court of Appeals is in all respects affirmed and the complainants will pay the costs.

CHAMBLISS, NEIL, and PREWITT, JJ., concur.