**EDWIN B. RASKIN COMPANY,
Plaintiff, Counter–Defendant,
Appellee,**

v.

**DORIC BUILDING COMPANY,
Defendant, Counter–Plaintiff
Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Aug. 7, 1991.

Permission to Appeal Denied by
Supreme Court Nov. 25, 1991.

Arthur K. Lowen, Nashville, for appellee.

Stewart F. Kresge, Nashville, for appellant.

## HIGHERS, Judge.

This breach of contract action is appealed from the Chancery Court at Davidson County. Plaintiff, Edwin B. Raskin Co. (Raskin), brought this action against Doric Building Company (Doric) for real estate leasing commissions allegedly owed to Raskin pursuant to a 1973 Lease Agreement between Doric, as lessor, and Friedman's, Inc., as lessee. Raskin actually brought suit for breach of a 1987 Lease Agreement between Doric and Friedman's on the grounds that the 1987 Lease is merely a renewal or extension of the 1973 Lease, which provides that commissions are to be paid to Raskin. Doric brought a counterclaim for commissions it allegedly overpaid. The trial court dismissed Doric's counterclaim and held that the 1987 Lease Agreement was a renewal of the 1973 Lease Agreement and, therefore, Raskin is entitled to commissions as set forth in the 1973 Lease Agreement. Doric appeals asserting that the 1987 Lease Agreement is a separate lease and not a renewal or extension of the 1973 Lease Agreement.

The majority of facts in the case at bar are undisputed. The only fact in dispute is whether the 1987 Lease Agreement is a renewal or extension of the 1973 Lease Agreement or whether it is a completely separate lease. On May 29, 1973, Doric, as lessor, and Freidman's, as lessee, entered into their first lease agreement (hereinafter the "1973 Lease") for certain property located in Nashville, Tennessee. Raskin was the real estate broker for the transaction. With regard to Raskin, the 1973 Lease provides in pertinent part:

> Edwin R. Baskin Company (sic), its successors, heirs or assigns, shall receive a commission of six per cent (6%) on all rents received hereunder, any options, renewals or extensions thereof, to be paid by the Lessor, their successors, heirs or assigns.

The rent due under the 1973 Lease was $1,275 per month from which Raskin received $76.50 per month. The 1973 Lease was for a term of ten years and 12 days beginning on May 20, 1973 and ending on April 30, 1983. The 1973 Lease also had an option for renewal of the term for five years which Freidman's exercised, thereby extending the term of the Lease to April 30, 1988. However, in January 1987 Doric and Freidman's negotiated a new lease which became effective on February 1, 1987 (hereinafter the "1987 Lease"). The term for the 1987 Lease was five years "with a like term automatic renewal unless Tenant gives Landlord notice six (6) months prior to expiration." The rent for the first year under the 1987 Lease is $4,350 per month but there is a provision for a 5% increase in rent each year including the 5 years that the lease may be renewed. The only reference in the 1987 Lease regarding the amount of commissions to be paid to Raskin is a handwritten sentence at the bottom of Exhibit B to the Lease, providing: "Landlord shall be responsible for Raskin's commission of $76.50 per month to and through May 1988, and thereafter tenant shall be responsible for said commission." Doric paid Raskin commissions of $76.50 per month through June 1988 and in August 1988 Doric sent Raskin a check for $2,927.70.

On October 11, 1988 Raskin brought this action against Doric for commissions Doric allegedly owed pursuant to the 1987 Lease. Doric counterclaimed for the money it had allegedly overpaid. In a bench trial, the trial court dismissed Doric's counterclaim and held that the 1987 Lease was a renewal of the 1973 Lease thereby entitling Raskin

to commissions on the 1987 Lease. We reverse and remand.

The only question before this Court is whether the 1987 Lease is a renewal or extension of the 1973 Lease or whether it is a completely separate lease.

In the absence of fraud or mistake, a contract must be interpreted and enforced as it is written. *See St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948 (Tenn.App.1986). Furthermore, in construing a contract, the words expressing the parties' intention should be given their usual, natural and ordinary meaning. *See Heyer–Jordan & Associates, Inc. v. Jordan*, 801 S.W.2d 814 (Tenn.App.1990). Likewise, in seeking to find the intention of the parties to a contract, the words in the contract, unless otherwise defined, will be given their usual and ordinary meaning. *See Seeley v. Pilot Fire & Casualty Co.*, 222 Tenn. 33, 432 S.W.2d 58 (1968).

The 1973 Lease provides in pertinent part as follows:

Edwin R. Baskin Company (sic), its successors, heirs or assigns, shall receive a commission of six per cent (6%) on all rents received hereunder, any options, renewals or extensions thereof, to be paid by the Lessor, their successors, heirs or assigns....

THE ENTIRE CONTRACT BETWEEN THE PARTIES IS CONTAINED IN THIS INSTRUMENT and all covenants, stipulations and conditions herein contained shall be binding upon the parties hereto, their heirs, successors and personal representatives.

The 1987 Lease does not refer to the 1973 Lease, but rather the 1987 Lease provides:

This Lease and the exhibits, rider and/or addenda, if any, attached contain all covenants and agreements between Landlord and Tenant relating in any manner to the rental, use and occupancy of the Demised Premises and the other matters set forth in this Lease. No prior agreement or understanding pertaining to the same shall be valid or of any force or effect; and, the covenants and agreements of this Lease cannot be altered,

changed, modified or added, to, except in writing signed by Landlord and Tenant.

. . . . .

Tenant and/or H.F. Freidman agree to hold Landlord harmless from any claim of Edwin R. Raskin Co. (sic), for commissions or fees on this or any other lease agreement, together with costs, damages, attorneys fees or court costs.

At the end of the bench trial the trial court held as follows:

The Court is of the opinion that, although numerous terms and conditions of the 1987 Lease between Doric Building Company and its tenant differ substantially from the terms and conditions of the 1973 Lease between the same parties for the same premises, the 1987 Lease constitutes a renewal of the 1973 Lease.

Our review of the findings of fact of the trial court in a non-jury trial is *de novo* upon the record of the trial court accompanied by a presumption of the correctness of the findings unless the preponderance of the evidence is otherwise. T.R.A.P. 13(d).

In *Womble v. Walker*, 181 Tenn. 246, 181 S.W.2d 5 (1944), our Supreme Court dealt with the meaning of the term "renewal" in a lease contract. In *Womble* the lessor entered into a lease with lessee pursuant to a written lease agreement with an option to purchase. *Id.* at 247, 181 S.W.2d at 5. The lease was written for a five year term and, at the time of trial, the lease had been renewed for three subsequent five year terms, such that the final renewal had not expired when plaintiffs, the heirs of lessor, sought to sell the property and defendant, the lessee, sought to exercise his option to purchase. The court was asked to determine, among other things, "whether under the terms of the original lease, bearing in mind the acts and relation of the parties, the undisputed facts make out a renewal of the original lease or a tenure by defendant of a different sort." *Id.* at 253–54, 181 S.W.2d at 8. The court held that the lease had been validly renewed. In determining the meaning of the

term "renewal" the court provided as follows:

'So where a lease gives a lessee a renewal at his election, and he elects to continue, a present demise is created, which is subject to all the conditions and covenants of his former lease, and it is not necessary that a new lease shall be executed. *In the absence of an express provision that a new lease is intended to be executed, the presumption is that no new lease is intended, but that the lessee is to continue to hold under the original lease.* * * * The reason for the presumption is the fact that the making of a new lease would involve trouble and expense, which should be avoided by the courts if possible unless it is very clear that the parties have previously agreed to incur such trouble and expense. For, if the new lease, as is always the case, when executed, is but a substitute for, and a re-execution of, the old lease, it is in no wise more efficacious or obligatory, nor does it confer any greater rights than the old.' (emphasis in original)

*Id.* at 255, 181 S.W.2d at 8, *quoting Underhill on Landlord & Tenant* (ed. 1909), sec. 803. In *Womble*, unlike the case at bar, each renewal was entered into under the same terms as the original contract. *Id.* at 251, 181 S.W.2d at 7. For example, the court notes that defendant paid the same consideration during the three additional terms as he paid under the original five year lease. *Id.* at 253, 181 S.W.2d at 8. If the new lease contains the same terms and conditions as the old lease such that it is merely a re-execution of the old lease, and does not confer any greater obligations or rights than those in the old lease, then the transaction is a renewal of the old lease. In the case at bar the 1973 Lease is 6 pages long whereas the 1987 Lease is 23 pages long. The terms of the 1987 Lease significantly change the rights and obligations of the parties adding terms regarding numerous topics that are not addressed in the 1973 Lease. Although a renewal can take the form of a new lease, both the fact that the original lease provides for the possibility of a renewal and the fact that a new lease is entered into between the same parties for the same premises do not make the subsequent lease a renewal of the former lease if the terms and conditions of the new lease confer any greater rights or obligations on the parties, unless the new lease expressly states that it is a renewal or extension.

Looking at the plain meaning of the language in both the 1973 Lease and the 1987 Lease, there is no indication that the parties intended the 1987 Lease to be a renewal of the 1973 Lease. Had the parties expressly provided that the 1987 Lease was a renewal of the 1973 Lease then the language expressly indicating such intention would be controlling. To the contrary, both leases indicate that each is a contract in and of itself and the 1987 Lease expressly provides: "No prior agreement or understanding pertaining to the same shall be valid or of any force or effect." Thus, the 1987 Lease does not make reference to or renew any portion of the 1973 Lease and cannot be a renewal thereof.

The 1973 Lease also mentions the possibility of an extension of the contract and for that reason we shall briefly address the issue of extensions. In *Womble v. Walker, supra.,* the court provides:

Generally speaking, the word 'renewal' ... is frequently used as synonymous with 'extension,' and the tendency of the courts seems to be to disregard any distinction between them.

*Womble,* 181 Tenn. at 255, 181 S.W.2d at 8. Additionally, courts have provided that the theory of an extension arises out of the mutual intent of the landlord and tenant to continue their relationship subject to the terms and conditions of the original lease. *See Rainwater v. Preas,* 32 Tenn.App. 79, 221 S.W.2d 829 (1949). Thus, as noted above, the terms and conditions of the 1987 Lease are vastly different from those in the 1973 Lease. In addition, the language of the 1987 Lease does not indicate that it was intended to be an extension of the 1973 Lease. For these reasons, we find that the 1987 Lease is not an extension of the 1973 Lease.

Finding that the evidence preponderates against the holding of the trial court, we

reverse. We find that the 1987 Lease is a completely separate lease and it is not a renewal of the 1973 Lease. Furthermore, we hold that, in accord with the language of the 1987 Lease, Doric is liable to Raskin for commissions of $76.50 per month only through May 1988 and Raskin is liable to Doric for any amounts Doric has paid over and above said commissions. We reverse and remand this cause to the trial court for a determination of the amount, if any, for which Raskin is liable to Doric due to Doric's overpayment of the commissions owed.

Costs are taxed to Raskin.

TOMLIN, P.J. (W.S.), and CRAWFORD, J., concur.