**Charles G. KEY, Plaintiff/Appellant,**

v.

**EDWIN B. RASKIN COMPANY, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 11, 1996.

Permission to Appeal Denied by Supreme Court May 27, 1997.

George E. Copple, Jr., Nashville, for Plaintiff/Appellant.

David J. White, Jr., White & Reasor, Nashville, for Defendant/Appellee.

## OPINION

CANTRELL, Judge.

The issue on appeal is whether a lease entered into by the same parties for a subsequent term is a renewal of the original lease, thereby entitling the plaintiff to a real estate

150

commission. The chancellor held that the new lease was not a renewal of the old one. We affirm that decision but modify the chancellor's order and delete the judgment for the plaintiff for a part of the commission earned during the first renewal period.

## I.

Thomas G. Key started working as an affiliate real estate broker with the Edwin B. Raskin Company in 1983. In 1985 Mr. Key procured St. Thomas Hospital as a tenant for a building owned by one of Raskin's clients. The original lease was for a five year term with options to renew for three additional three year terms. The rent for the subsequent terms was to be computed at the prevailing market rate. The lease provided that during the renewal periods "all terms, covenants and conditions of the Lease shall continue in full force and effect." The options were to be exercised by written notice to the lessor at least 120 days prior to the expiration of the lease term.

When the initial lease period expired in 1990, Mr. Key was no longer affiliated with Raskin, and St. Thomas Hospital did not renew the lease by giving notice 120 days prior to the expiration of the lease term. Neither did they negotiate for a rental payment based on the prevailing market rate. Instead, St. Thomas insisted on a new base rent and the replacement of the rental adjustment provision in the 1985 lease, which had cost it between $50,000 and $75,000 each year, with a provision calling for rent adjustments based on the consumer price index.

Raskin stopped paying Mr. Key any commissions on the new rental payments. Mr. Key asked for an explanation, and Raskin's president replied that he did not think the new lease was a renewal. When Mr. Key pressed the point Raskin paid the commission (less a 30% service charge unilaterally imposed by Raskin) until the new lease expired in 1993. Raskin's president testified that the commissions were paid to avoid an unpleasant situation.

In 1993 the parties again renegotiated the terms of the lease payments, this time they deleted the rental adjustment provision altogether, providing for a flat base rent that yielded about $10,000 less annually to the lessor than the prior base rent.

Raskin again stopped paying Mr. Key any commissions, and this action resulted. The chancellor held that the plaintiff was not entitled to a commission on the 1993 lease, but was entitled to recover the 30% Raskin had withheld in the 1990–93 lease.

## II.

The chancellor found that there was no proof that the 1990 lease was renegotiated to avoid paying Mr. Key his commission. We concur in that assessment of the proof; this dispute is, therefore, reduced to a question of whether the chancellor was correct in concluding that the 1990 and 1993 amendments deviated so significantly from the original lease that they were not renewals but an entirely new lease.

Mr. Key argues that any extension of the lease involving the same parties and the same premises is a renewal under the terms of his agreement with Raskin. He does not cite any authority for this position, but asserts that it should be adopted as a general proposition. On the other hand, Raskin argues, also without citation of authority, that a broker is entitled to a commission on the lease renewal *only* if the renewal is in accordance with the renewal provisions in the original lease. In the instant case that would require a strict compliance with the 120 day notice provision and an application of prevailing market rates.

Both parties overlook the leading case in Tennessee on the question of what constitutes a renewal of a lease for purposes of deciding whether a real estate commission is due. In *Edwin B. Raskin Co. v. Doric Bldg. Co.*, 821 S.W.2d 948 (Tenn.App.1991)[1] this court said, "Although a renewal can take the form of a new lease, both the fact that the original lease provides for the possibility of a renewal and the fact that a new lease is

1. This oversight is more surprising considering that the plaintiff in that case is the defendant in the case at bar.

entered into between the same parties for the same premises do not make the subsequent lease a renewal of the former lease if the terms and conditions of the new lease confer any greater rights or obligations on the parties...." 821 S.W.2d at 951. The court went on to say that the word "renewal" had taken on the same meaning as an "extension" and that an extension arises out of the mutual intent of the landlord and tenant to continue their relationship subject to the terms and conditions of the original lease. Finding that the terms and conditions of the original lease were "vastly different" from those in the later lease, the court held that the later lease was not a renewal or extension of the original one.

In this case we find that the terms and conditions of the subsequent lease, while not vastly different, are substantially different from the terms and conditions of the original lease. The parties went through a period of intense negotiations in order to arrive at a new lease in 1990 and again in 1993. Mr. Key was not around to assist in those negotiations. Therefore, we affirm the chancellor's conclusion that he is not entitled to a commission on the 1993 lease.

### III.

■ Raskin asserts on appeal that the chancellor erred in awarding Mr. Key a judgment for the 30% withheld from the commission paid during the 1990–93 period. We agree, because the award assumes that Mr. Key was entitled to a commission during that period. If we are correct in our conclusion that the 1990 lease was not a renewal or extension of the original lease, Raskin was not obligated to pay him anything during the 1990–93 period. Therefore, the payments made during this period were voluntary payments, made to avoid controversy. Withholding 30% of something Raskin was not obligated to pay does not create an enforceable claim on the part of Mr. Key. The chancellor's order should be modified to delete the judgment to Mr. Key for any underpayment during the 1990–93 lease.

The judgment below is modified as indicated herein. In all other respects the judgment is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings that may become necessary. Tax the costs on appeal to the appellant.

LEWIS and KOCH, JJ., concur.