IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 13, 2011 Session

**BSG, LLC v. CHECK VELOCITY, INC.**

**Appeal from the Chancery Court for Davidson County**
**No. 09-2113-II      Carol L. McCoy, Chancellor**

**No. M2011-00355-COA-R3-CV - Filed August 11, 2011**

BSG, LLC introduced CheckVelocity to Weight Watchers.  In 2005, CheckVelocity and Weight Watchers entered into an agreement whereby CheckVelocity provided check collection services.  BSG, in accordance with its agreement with CheckVelocity, was to receive compensation for its introduction of CheckVelocity to Weight Watchers in the form of residual fees during the time of the CheckVelocity - Weight Watchers agreement and any renewal agreements.  In 2008, CheckVelocity and Weight Watchers entered into a new agreement in which credit card collection services were added and the check collection services were continued unchanged. CheckVelocity stopped paying the residual fees because it considered the Weight Watchers agreement to be a new agreement, not a renewal of the old one.  BSG sued.  The trial court considered the 2008 agreement to be a new agreement, not a renewal, and ruled for CheckVelocity.  BSG appealed.  We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Alvin Scott Derrick, Nashville, Tennessee, for the appellant, BSG, LLC.

Nick Shelton, Franklin, Tennessee, for the appellee, Check Velocity, Inc.

**OPINION**

BSG, LLC ("BSG") markets and provides various financial services to businesses. CheckVelocity, Inc. ("CV") processes and collects returned checks and other items for businesses.  On February 23, 2004, BSG and CV entered into a two-year agreement called "Re-Presented Check Collection Services Referral Agreement."  Another such agreement was consummated February 24, 2006.   The essential terms of both agreements are the same.

BSG agreed to market the services of CV. In turn, CV agreed to pay periodic compensation to BSG, called fee residuals,[1] during and after the term of the agreement based on the transactions processed by CV for BSG's financial institution and business clients. Specifically, Section 3 of the agreement provided that the payments were to continue "until the expiration of the Customer agreements as they may be renewed . . . ."

BSG introduced CV to Weight Watchers, a company that was interested in contracting for check recovery services. In June 2005, CV and Weight Watchers entered into a two-year "Electronic Check Recovery Agreement." Over the next three years, even though it was a two-year agreement, CV processed returned checks for Weight Watchers and collected fees. In accordance with its agreement with BSG, CV paid residuals arising from the Weight Watcher's agreement to BSG.

On August 13, 2008, Weight Watchers and CV entered into a "Collection Services Agreement." The agreement provided for the same check collection services that CV had been providing and added services for the collection of declined credit card accounts. At this point, CV ceased paying BSG residual fees, taking the position that the 2008 agreement was a new agreement with Weight Watchers, not a renewal of the 2005 agreement. The creation of the new agreement, according to CV, cut off BSG's right to continued payments.

BSG sued CV for breach of contract. After written discovery and three depositions, CV filed a motion for summary judgment. The trial court granted the motion, determining that:

> the terms of the CheckVelocity and Weight Watchers contract were altered or supplemented by the 2008 contract between CheckVeloctity and Weight Watchers, creating a new contract. At that point in 2008, CheckVelocity and Weight Watchers entered into a new contract, not a renewal, and were no longer required to pay BSG net fee residuals.

The trial court also noted that, "The 2004 contract between BSG and CV did not address check processing services for business by the clear terms of the said 2004 agreement between the parties. Ambiguity is interpreted against the drafter and BSG was the original drafter of the 2004 and 2006 contracts between the parties." Finally, the trial court found that, "The argument of BSG that the net fee residuals were to continue perpetually was not the intent of the parties."

---

[1]The second agreement used the term "Net Fee Residuals," which had the effect of reducing BSG's compensation.

BSG appealed to this court.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003). We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, we must determine whether factual disputes exist. *Byrd v. Hall,* 847 S.W.2d 208, 211 (Tenn. 1993). If a factual dispute exists, we must determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Id.; Rutherford v. Polar Tank Trailer, Inc.,* 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998). To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must negate an element of the opposing party's claim or "show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 8–9 (Tenn. 2008).

The interpretation of a contract is an issue of law, which the appellate courts will review de novo. *Forrest Constr. Co., LLC v. Laughlin*, 337 S.W.3d 211, 220 (Tenn. Ct. App. 2009).

## Analysis

The facts in this case are not in dispute. The focus of this case is the meaning of the contract between BSG and CV. Contracts should be interpreted to ascertain and give effect to the intention of the parties. *Id*. The words of the contract "should be given their usual, natural, and ordinary meaning." *Id*.

The portion of the contract between BSG and CV that is relevant to this issue reads as follows:

CheckVelocity's liability for any CheckVelocity Net Fee Residuals payable under Section 2 of this Agreement (and BSG's Audit Rights in connection with its residual payments) shall survive the termination of this Agreement and

continue until the expiration of the Customer Agreements as they may be renewed under which such CheckVelocity Net Fee Residuals are payable.[2]

Thus, the matter boils down to what constitutes a "renewal." CV says the 2008 agreement with Weight Watchers was a new agreement because it added a new service and altered the choice of law provision. BSG says the 2008 agreement between CV and Weight Watchers was a renewal of the prior agreement because the check collecting services CV provided to Weight Watchers remained the same. BSG does not seek any residuals for the new services CV was to provide Weight Watchers under the 2008 agreement.

This court has previously examined the term "renewal." "'Renewal' is defined as '[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract.'" *Heatherly v. Campbell County Bd. of Educ.*, No. E2004-02004-COA-R3-CV, 2005 WL 562752, at *3 (Tenn. Ct. App. March 10, 2005) (quoting BLACK'S LAW DICTIONARY 1299 (7th ed.1999)). Based on this definition, a new contract alone does not preclude the existence of a renewal.

It has been said that " [a] renewal of a contract will be presumed to be in accordance with the terms of the original contract in the absence of evidence to the contrary." 17B C.J.S. *Contracts* § 662 (2011). This statement is consistent with Tennessee law regarding insurance policies: "When an insurance policy renewal is made, unless otherwise provided and called to the attention of the insured, the terms of the original policy become a part of the renewal contract of insurance."[3] *Brewer v. Vanguard Ins. Co.*, 614 S.W.2d 360, 363 (Tenn. Ct. App. 1980). In the context of leases, this court has said that if a new lease "is merely a re-execution of the old lease, and does not confer any greater obligations or rights than those in the old lease, then the transaction is a renewal of the old lease." *M & M Properties v. Maples*, No. 03A01-9705-CH-00171, 1998 WL 29974, at *8 (Tenn. Ct. App. Jan. 12, 1998) (citing *Edwin B. Raskin Co. v. Doric Bldg. Co.*, 821 S.W.2d 948, 951 (Tenn. Ct. App. 1991).

What about when new provisions are added to the new agreement which have nothing to do with the old provisions which are retained? In oral argument, counsel for CV stated

---

[2]The above-quoted language is from the second BSG - CV agreement. The language differs from the first agreement only by use of "Net Fee Residuals" instead of "Fee Residuals," insertion of the parenthetical, and deletion of the words "expiration or" before the word "termination."

[3]In the insurance policy context, this court has also said, without citation to any legal authority, that "[t]o renew the contract is to begin it again or to keep it in effect and obviously, it must be a renewal of what is in existence on the date that that renewal takes effect." *Lederer v. Vulcan Life Ins. Co.*, No. 89-256-II, 1990 WL 2222, at *6 (Tenn. Ct. App. Jan. 17, 1990). In light of the authorities cited above, we do not consider it to be so obvious.

that "[w]hat occurred in 2008, and it's undisputed, Weight Watchers calls CheckVelocity and says, "hey, we want some new services; we want some additional services."" This comment indicates the focus of the negotiations for the new agreement was on the new services Weight Watchers desired. Indeed, the 2008 agreement of the parties supports this interpretation of the events leading up to the agreement. The provisions regarding the old services remain the same with the exception of the forum selection provision, which applied to the new and the old services. The fact that retention of the old services may have affected the cost of the new services to be provided does not change the fact that the old services continued as before.

In light of the above discussion, we are of the opinion that the 2008 agreement between CV and Weight Watchers did renew the old agreement regarding check collection services. The addition of new, distinct services does not change the fact that the old services continued uninterrupted and unchanged. Furthermore, we do not find the agreement between BSG and CV ambiguous concerning renewals. The language clearly provides for continued fee residuals as long as the Weight Watchers - CV check collections services terms continue substantially unaltered.

The grant of summary judgment by the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against CheckVelocity, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE