IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2023 Session

## MICHAEL TOMLIN, INDIVIDUALLY, AND D/B/A THE TOMLIN COMPANY v. NEPHROLOGY ASSOCIATES, P.C. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 10-1819-IV      Russell T. Perkins, Chancellor**

———————————————————

**No. M2022-00937-COA-R3-CV**

———————————————————

A renal care company retained a broker to locate sites for new dialysis clinics. The company agreed to pay the broker a commission when leases were signed and "at the renewal or extension of said leases." The company later negotiated amendments to the leases without the broker's participation. The broker sued the company for breach of contract, alleging that he was due a commission on the lease amendments. The trial court determined that eight lease amendments were renewals or extensions of the original leases. And it entered a judgment against the company for the amount of the unpaid commissions. We conclude that the evidence preponderates against the court's finding that two of the lease amendments were renewals or extensions. So we affirm the judgment as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and JEFFREY USMAN, JJ., joined.

Cavender C. Kimble, Birmingham, Alabama, for the appellants, Renal Care Group, Inc., and Nephrology Associates, P.C.

Robert L. DeLaney, Nashville, Tennessee, for the appellee, Michael Tomlin.

## OPINION

## I.

A nascent renal care company retained Michael Tomlin, a commercial real estate broker, to help the company establish new dialysis clinics. For three years, Mr. Tomlin located sites for new clinics, negotiated leases as well as land and building purchases, and supervised construction of the facilities. Among other things, the company agreed to pay Mr. Tomlin "a four (4%) percent commission on the gross rental payments of all leases upon signing of the lease and at the renewal or extension of such leases." Mr. Tomlin negotiated leases for clinics in eighteen locations before he terminated his contract. As promised, he was paid a 4% commission when each lease was signed.[1]

The company later negotiated and executed amendments to the leases without Mr. Tomlin's participation. At least ten of the leases were amended; some leases, more than once. Believing that he was entitled to a commission on these transactions, Mr. Tomlin contacted the company and demanded payment. The company refused.

In 2010, Mr. Tomlin filed this breach of contract action against Nephrology Associates, P.C. and Renal Care Group, Inc.,[2] alleging that the defendants owed him additional compensation. The defendants denied liability. They also sought a declaratory judgment as to Mr. Tomlin's right to any future commissions.

After a bench trial, the trial court determined that the defendants owed Mr. Tomlin additional commissions. Mr. Tomlin was entitled to a 4% commission "at the renewal or extension" of the leases he had procured. In the court's view, this language was clear and unambiguous. After reviewing the leases and the amendments, the court found that eight of the amendments were renewals or extensions. The other amendments were entirely new leases. The court entered a judgment against the defendants for $192,298. And it declared that Mr. Tomlin was entitled to receive commissions on future renewals or extensions of the original leases. The defendants appealed.

---

[1] The parties stipulated that Mr. Tomlin was paid a 4% commission on all the original leases except for the lease for a clinic in East Orange, New Jersey.

[2] Nephrology Associates, P.C. is a medical professional corporation. Some of the physician shareholders in Nephrology Associates, P.C. were also members of the renal care company that initially retained Mr. Tomlin. Dr. Jeffrey Hymes, Dr. Jerome Tannenbaum, and Mr. Steven Harrison formed a new renal care company, Dialysis Associates, LLC, in 1998. National Nephrology Associates, Inc. purchased the fledgling enterprise that same year. National Nephrology Associates later merged into Renal Care Group, Inc. And Renal Care Group has since been acquired by yet another entity. Mr. Tomlin performed the same services for the company throughout these mergers and acquisitions. The parties have agreed that Renal Care Group is the entity responsible for satisfying any judgment Mr. Tomlin obtains in this action.

2

On appeal, this Court determined that the trial court failed to rule on some of Mr. Tomlin's claims. *Tomlin v. Renal Care Grp., Inc.*, No. M2016-02216-COA-R3-CV, 2017 WL 5952916, at *4 (Tenn. Ct. App. Nov. 30, 2017). Because the judgment was not final, we dismissed the appeal. *Id.*

On remand, the trial court determined that Mr. Tomlin was not entitled to recover on the remaining claims. It also vacated the declaratory judgment. Otherwise, the court reaffirmed its previous ruling. Again the defendants appealed.

## II.

The sole issue on appeal is whether the trial court erred in concluding that seven lease amendments were renewals or extensions of the original leases. The defendants do not challenge the trial court's finding as to one of the lease amendments. Because this was a bench trial, our review is de novo on the record with a presumption that the trial court's factual findings are correct, unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d). We review questions of law de novo with no presumption of correctness. *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006).

Renewal is not a term of art. *Womble v. Walker*, 181 S.W.2d 5, 9 (Tenn. 1944). The word has "no legal or technical signification." *Id.* (quoting *Md. Theatrical Corp. v. Manayunk Tr. Co.*, 146 A. 805, 810 (Md. 1929)). But while renewal can have "multiple meanings," it is frequently used as a synonym for extension. *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 93 (Tenn. 2012); *Womble*, 181 S.W.2d at 8 (citation omitted); *cf. Renewal*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "renewal" as "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract"). Here, the trial court construed renewal as synonymous with extension. On appeal, neither party advocates for a different construction.

The defendants insist that two of our prior opinions, *Edwin B. Raskin Co. v. Doric Bldg. Co.*, 821 S.W.2d 948 (Tenn. Ct. App. 1991), and *Key v. Edwin B. Raskin Co.*, 947 S.W.2d 149 (Tenn. Ct. App. 1996), set the defining standard for identifying a lease renewal. And the trial court misapplied this legal precedent. We do not share the defendants' view of these opinions. While the cited cases are instructive, they do not establish a precise measuring stick. In both cases, this Court considered whether a subsequent lease arrangement was a renewal of a previous lease. *Key*, 947 S.W.2d at 150; *Edwin B. Raskin Co.*, 821 S.W.2d at 950. We rejected the argument that all subsequent lease arrangements between the same parties for the same premises were renewals. *Key*, 947 S.W.2d at 150-51; *Edwin B. Raskin Co.*, 821 S.W.2d at 951. Those two facts alone were not dispositive under the circumstances. In both cases, other facts militated against finding a renewal. There were substantial differences between the new terms and the terms of the original

3

leases. *Key*, 947 S.W.2d at 151; *Edwin B. Raskin Co.*, 821 S.W.2d at 951. And there was no indication that the parties intended for the new lease to be renewal. *Edwin B. Raskin Co.*, 821 S.W.2d at 951.

Here, most of the amendments extended the term of the original leases with modifications. Except for the specified modifications, the parties "ratified, republished and reaffirmed" the original lease terms and incorporated them into the amendments. In the court's view, the modified terms in these lease amendments did not confer any greater rights or obligations on the parties. The new terms were not substantially different from the original terms. The court also relied on language in the amendments indicating that the leasing parties intended for these amendments to serve as renewals or extensions of the original leases.

According to the defendants, the intent of the leasing parties was not a relevant consideration. They characterize this Court's reference to the parties' intent in *Edwin B. Raskin* as mere dicta. We disagree. The court's task in any contract dispute "is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The parties' words are "the lodestar of contract interpretation." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). And if the leasing parties expressly provided that the subsequent lease arrangement was a renewal or an extension of the original lease, "then the language expressly indicating such intention would be controlling." *Edwin B. Raskin Co.*, 821 S.W.2d at 951.[3]

The defendants also complain that the amendments did not comply with the renewal options in the original leases. This might be a legitimate complaint if the parties' contract had been worded differently. *Cf. Plumbing Indus. Program, Inc. v. Good*, 120 So. 2d 639, 640 (Fla. Dist. Ct. App. 1960) (interpreting contract providing for payment of a commission if lessee "exercise[d] its option to renew or extend said lease"); *Baumann Realtors, Inc. v. First Columbia Century-30, LLC*, 58 N.Y.S.3d 846, 847 (N.Y. App. Div. 2017) (involving agreement providing for a commission "if the lessee 'renews or extends the term of the lease'"). But Mr. Tomlin's commission did not depend on the exercise of the renewal option. He was entitled to a commission "at the renewal or extension of said leases."

The trial court found that the terms of the first amendment to the sublease for the clinic in Springfield, Tennessee, were not substantially different from those under the original sublease. And the language of the amendment indicated that the parties intended

---

[3] The defendants highlight the omission of similar intent language in the *Key* decision. We do not view the silence in *Key* as implicit disapproval of the analysis in *Edwin B. Raskin*. Nor do we read the *Key* decision as "tailoring" or refining our previous opinion. Any differences between the two opinions are attributable to the particular facts and circumstances at issue.

4

for this amendment to be a renewal or extension of the original sublease. The evidence does not preponderate against these findings. The parties extended the original lease term and altered the monthly base rent during the extended term. Otherwise, they reaffirmed the terms and conditions of the original sublease. And they expressly acknowledged that one of the two renewal options in the sublease remained available to the lessee.

Similarly, the trial court found that the first amendment to the sublease for the clinic in West Nashville was not substantially different from the original sublease. Here, the leasing parties also extended the original term and modified the rent during the extension. Much like the Springfield amendment, the parties acknowledged that the lessee had one remaining renewal option in the original sublease. And they expressed their intent to be bound by the remaining provisions of the original sublease. Like the trial court, we do not find the changes to the rent structure significant enough to create a new lease.

The first amendment to the sublease in Round Rock, Texas, also extended the lease term and modified the monthly base rent during the extended term. Except for those changes, all the terms of the original sublease remained in effect. The court found the new rent formula was substantially similar to the original rent. And the amendment conferred no greater rights or obligations on the parties. We agree with the court's assessment.

The first amendment to the sublease for the clinic in Tullahoma, Tennessee, extended the term of the sublease and made a relatively minor adjustment to the monthly base rent for the extended term. The amendment also gave the lessee the right to terminate the sublease upon 90 days written notice. Otherwise, the original lease terms remained in effect. The court did not view these changes as substantial. The evidence does not preponderate against that finding. The defendants complain that the amendment granted the lessee an additional right. Still we cannot say this additional right was particularly significant in light of the entire amendment.

As the defendants point out, the first amendment to the sublease for the East Nashville clinic not only extended the lease term, but also increased both the square footage and the monthly rent. The court found the first amendment was a continuation of the original sublease based on a previous expansion. The leasing parties expressly indicated that the first amendment was an extension of the original sublease. And the rental payments were substantially the same. The evidence does not preponderate against these findings. The original sublease was executed before the leasing parties ascertained the actual square footage of the rental space. The sublease also granted the lessee an expansion option. After the leasing parties expanded the rental space, they executed this amendment adjusting the square footage and rent accordingly. The amendment also extended the lease term. All other terms in the sublease remained in effect. Given the terms of the original sublease, we agree that the first amendment was an extension of the original sublease, not an entirely new lease. The defendants complain that this sublease did not have a renewal option. A renewal option gives the lessee an irrevocable right to renew the lease under specified

5

conditions. *Norton v. McCaskill*, 12 S.W.3d 789, 792 (Tenn. 2000). No option is necessary when both parties mutually agree to an extension.

The evidence does preponderate against the trial court's findings with respect to the two amendments modifying the original sublease in Harrison, New Jersey. The original ten-year sublease for this location was executed on June 7, 2000. And Mr. Tomlin was paid his commission when the lease was signed. The lessor terminated the sublease on October 10. A month later, the parties executed a lease modification agreement, which reinstated the original sublease as modified. The agreement plainly indicated that it was a reinstatement, not an extension, of the original sublease. And the modifications to the original sublease were substantial. The new agreement altered the construction deadline, increased the security deposit, and changed the terms of the original renewal option. It also substantially increased the monthly base rent during the original term. Because the first modification agreement created a new lease, the second lease modification agreement two years later cannot be viewed as a renewal of the original sublease.

In sum, the evidence does not preponderate against the trial court's findings with respect to five of the seven lease amendments at issue in this appeal. *See Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). Because the two lease modification agreements in Harrison, New Jersey, were not renewals or extensions of the original sublease, Mr. Tomlin was not entitled to any additional commission in connection with those agreements. Based on the parties' calculations, the court awarded Mr. Tomlin $33,270.80 as his commission for the two lease modification agreements in Harrison, New Jersey. So we reduce the court's revised final judgment by that amount.

## III.

The evidence preponderates against the court's finding that the first two lease modification agreements in Harrison, New Jersey, were renewals or extensions of the original sublease. But the evidence does not preponderate against the court's finding that the lease amendments in the other five locations were renewals or extensions. So we affirm the court's judgment as modified to reflect an award of $159,027.20.


       s/ W. Neal McBrayer
       W. NEAL MCBRAYER, JUDGE

6