# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### June 13, 2012 Session

## BSG, LLC v. CHECK VELOCITY, INC.

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 09-2113-II    Carol L. McCoy, Chancellor**

---

**No. M2011-00355-SC-R11-CV - Filed November 20, 2012**

---

A contract required payment of "fee residuals" from customers referred by BSG, LLC to Check Velocity, a company providing check re-presentment services. The contract provided that payment of fee residuals survived the termination of the agreement between the parties and continued until the "expiration of the Customer agreements as they may be renewed." Two agreements were executed between a referred customer and Check Velocity. The first agreement, which expired by its own terms, provided for check re-presentment services. The second agreement continued the re-presentment services required by the first agreement and added additional services. In addition, other terms of the first agreement were changed, including a choice of law provision. We hold that the second agreement with additional services and changed terms was not a renewal of the first agreement. Accordingly, we reverse the Court of Appeals and affirm the trial court's grant of summary judgment in favor of Check Velocity.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Trial Court Affirmed

JANICE M. HOLDER, delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

David O. Huff (at oral argument) and Nick Shelton, Nashville, Tennessee, for the appellant, Check Velocity, Inc.

Alvin Scott Derrick, Nashville, Tennessee, for the appellee, BSG, LLC

**OPINION**

I. Facts and Procedural History

BSG, LLC ("BSG") and Check Velocity, Inc. ("Check Velocity") entered into a two-year contract on February 23, 2004. Pursuant to this contract, BSG agreed to market Check Velocity's "Re$ubmitIt" program and refer customers to Check Velocity for check collection and processing. In return, Check Velocity provided BSG with periodic compensation or "fee residuals" payable from the fees Check Velocity collected. The contract terminated on February 23, 2006. On February 24, 2006, BSG and Check Velocity executed a similar contract that terminated on February 24, 2009. No further contracts were executed between BSG and Check Velocity.

While the first contract between BSG and Check Velocity was in effect, BSG referred Weight Watchers International, Inc. ("Weight Watchers") to Check Velocity for check collection and processing. Weight Watchers and Check Velocity entered into an "Electronic Check Recovery Agreement" ("ECR Agreement") effective June 29, 2005. When checks were returned for insufficient funds, the ECR Agreement required Weight Watchers to refer those checks to Check Velocity for electronic re-presentment. Electronic re-presentment is a third-party collection service by which a check that has been returned for insufficient funds is re-presented in electronic form. Check Velocity was required to complete the re-presentment process within ninety days from the date of receipt of each returned check. Assignment of the ECR Agreement was prohibited, and the agreement was governed by Tennessee law. Although the ECR Agreement expired on June 29, 2007, Check Velocity continued to provide Weight Watchers with re-presentment services and continued to pay fee residuals to BSG.

On August 13, 2008, Check Velocity and Weight Watchers entered into a "Collection Services Agreement." Pursuant to the Collection Services Agreement, Check Velocity continued to provide electronic re-presentment services to Weight Watchers. The Collection Services Agreement included new terms requiring Check Velocity to "[c]arry out reasonable collection efforts for credit card decline accounts." The Collection Services Agreement also changed several provisions in the prior agreement. Check Velocity was required to re-present returned checks within twenty days instead of the ninety days required by the ECR Agreement. Assignment of the contract, which was prohibited by the ECR Agreement, was permitted by the Collection Services Agreement. Additionally, the Collection Services Agreement was governed by the laws of New York rather than the laws of Tennessee.

Check Velocity continued to pay fee residuals to BSG until September 15, 2008, after which it made no further payments.[1] BSG filed a complaint in the Chancery Court for Davidson County alleging that Check Velocity's failure to pay fee residuals on the Weight Watchers contract after September 15, 2008, constituted a breach of the 2006 contract between BSG and Check Velocity. Check Velocity denied that it owed any further fee residuals to BSG. Check Velocity filed a motion for summary judgment asserting that there were no genuine issues of material fact because the Collection Services Agreement between Weight Watchers and Check Velocity constituted a new agreement and therefore no fee residuals were owed to BSG. The trial court agreed and awarded summary judgment in favor of Check Velocity.

BSG filed a timely notice of appeal, and the Court of Appeals reversed the trial court. The Court of Appeals held that the 2008 Collection Services Agreement between Weight Watchers and Check Velocity was a renewal of the 2005 ECR Agreement. BSG, LLC v. Check Velocity, Inc., No. M2011-00355-COA-R3-CV, 2011 WL 3558208, at *3 (Tenn. Ct. App. Aug. 11, 2011). As a renewal, Check Velocity was required to continue to pay fee residuals to BSG. BSG, 2011 WL 3558208, at *3. We granted Check Velocity permission to appeal.

## II. Analysis

This case requires us to interpret the 2006 contract[2] between BSG and Check Velocity to determine whether Check Velocity continues to owe fee residuals to BSG for the electronic re-presentment services to Weight Watchers. The interpretation of a written contract is a question of law, which we review de novo. 84 Lumber Co. v. Smith, 356 S.W.3d 380, 383 (Tenn. 2011). Our interpretation of a contract requires us to ascertain and give effect to the parties' intent. Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 611 (Tenn. 2006).

The language at issue in this case is the termination clause in the 2006 contract between BSG and Check Velocity. The contract between BSG and Check Velocity provides:

---

[1] The contract between BSG and Check Velocity provides that the net fee residuals would be "paid monthly . . . within 15 days following the previous month."

[2] Although Weight Watchers and Check Velocity entered into the ECR Agreement at the time the 2004 contract between BSG and Check Velocity was in force, the parties agree that the language of the 2006 contract between BSG and Check Velocity governs this dispute.

> This Agreement may be terminated by either party upon a default by the other party continuing after thirty (30) days notice to the other of the default; provided, however, that CheckVelocity's liability for any CheckVelocity Net Fee Residuals payable under Section 2 of this Agreement (and BSG's Audit Rights in connection with its residual payments) shall survive the termination of this Agreement and continue until the expiration of the Customer agreements as they may be renewed under which such CheckVelocity Net Fee Residuals are payable.

The parties do not dispute that the contract requires Check Velocity to continue to pay fee residuals to BSG from customer agreements so long as those customer agreements are renewed. Check Velocity is bound by this provision even after the expiration of the agreement between BSG and Check Velocity. Before this Court, the parties have defined the issue as whether the Collection Services Agreement with Weight Watchers is a renewal of the ECR Agreement or whether the Collection Services Agreement is an entirely new contract that supplants the ECR Agreement.

Initially, we must determine whether the contract language at issue is ambiguous. See Maggart v. Almany Realtors, Inc., 259 S.W.3d 700, 704 (Tenn. 2008). If the contract language is found to be clear and unambiguous, the contract language is interpreted according to its plain terms and ordinary meaning. Maggart, 259 S.W.3d at 704. Contract language will be deemed ambiguous when it can "be understood in more ways than one." Allstate Ins. Co., 195 S.W.3d at 611 (quoting Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975)) (internal quotation marks omitted). Contract language will not be considered ambiguous, however, merely because the parties differ as to their interpretation of the language. Johnson v. Johnson, 37 S.W.3d 892, 896 (Tenn. 2001) (quoting Cookeville Gynecology & Obstetrics, P.C. v. Se. Data Sys., Inc., 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994)).

The parties have not defined the term "renew" in their agreement. The term "renewal" has multiple meanings. A renewal is "[t]he re-creation of a legal relationship or the replacement of an old contract with a new contract, as opposed to the mere extension of a previous relationship or contract." Black's Law Dictionary 1410 (9th ed. 2009). This definition of renewal includes an entirely new contract. This Court has noted, however, that renewal "is frequently used as synonymous with extension." Womble v. Walker, 181 S.W.2d 5, 8 (Tenn. 1944) (internal quotation marks omitted). When used in the sense of a contract extension, a renewal is a contract for an additional period of time with the same terms and obligations as a prior contract and does not confer new obligations or rights. Cf. Womble, 181 S.W.2d at 8 (discussing renewal of a lease); Brewer v. Vanguard Ins. Co., 614 S.W.2d 360, 363 (Tenn. Ct. App. 1980) (discussing renewal of an insurance contract). Considered

in isolation, the meaning of the phrase "as they may be renewed" could be ambiguous because it may be understood to include an entirely new contract as well as a contract extension. See Allstate Ins. Co., 195 S.W.3d at 611.

We do not, however, read provisions of a contract in isolation. Maggart, 259 S.W.3d at 705. In construing a contract, "one clause may modify, limit or illuminate another." Maggart, 259 S.W.3d at 704 (quoting Cocke Cnty. Bd. of Highway Comm'rs v. Newport Utils. Bd., 690 S.W.2d 231, 237 (Tenn. 1985)). The 2006 contract between BSG and Check Velocity also states that "[t]he initial term of this Agreement shall be three (3) years commencing on its date of execution, and shall be renewable for successive terms of one (1) year upon the expiration of the initial term upon mutual consent." (Emphasis added). This provision reflects the parties' understanding that a renewal of the contract between BSG and Check Velocity is an extension of the initial term of the contract for an additional period of time with the same terms. Absent a contrary indication, a word will generally be given the same meaning throughout a contract. 11 Richard A. Lord, Williston on Contracts § 32:6 (4th ed. 2012). We therefore hold that the meaning of "renew" within the contract between BSG and Check Velocity is a contract extension for an additional period of time with the same terms and conditions of the original contract.

The course of conduct of Check Velocity supports the interpretation that the parties intended a renewal to be a contract extension. Pinson Assoc. Ins. Agency, Inc. v. Kreal, 800 S.W.2d 486, 487 (Tenn. Ct. App. 1990). Weight Watchers and Check Velocity continued to perform the ECR Agreement after it terminated by its own terms on June 29, 2007. This Court has held that when parties continue to perform the same services after a contract for a definite term has expired, it is presumed that they are operating under a "new contract having the same terms and conditions as the original one." Cf. Delzell v. Pope, 294 S.W.2d 690, 694 (Tenn. 1956) (internal quotation marks omitted) (stating the general rule in the context of employment contracts). By continuing to operate under the terms of the ECR Agreement, Check Velocity and Weight Watchers implicitly renewed the ECR Agreement with the same terms. Consistent with this interpretation, Check Velocity paid BSG fee residuals after the termination of the ECR Agreement until the execution of the Collection Services Agreement on August 13, 2008.

When Check Velocity and Weight Watchers executed the Collection Services Agreement, however, Check Velocity and Weight Watchers ceased operating under the terms of the ECR Agreement. Comparing the ECR Agreement to the Collection Services Agreement, we observe that the two agreements had substantially different terms. Check Velocity and Weight Watchers added an entirely new obligation in the Collection Services Agreement in the form of credit card collection services. The right to assign contractual rights was also altered. Unlike the ECR Agreement, which prohibited assignment, the

Collection Services Agreement permitted either party to assign its rights under the contract. Although Check Velocity continued to perform electronic re-presentment services pursuant to the Collection Services Agreement, the terms of the re-presentment services were altered. The Collection Services Agreement decreased the time in which Check Velocity was required to re-present returned checks, requiring Check Velocity to re-present within twenty days in contrast to the ninety days permitted in the ECR Agreement. The Collection Services Agreement also changed the choice of law provision from Tennessee to New York.

The substantial changes reflected in the Collection Services Agreement made that agreement inconsistent with the terms of the ECR Agreement. We therefore conclude that the Collection Services Agreement was not a renewal of the ECR Agreement between Check Velocity and Weight Watchers as that term is used in the 2006 contract between BSG and Check Velocity.

Because we conclude that the Collection Services Agreement between Weight Watchers and Check Velocity was not a renewal of the ECR Agreement, Check Velocity does not continue to owe fee residuals to BSG pursuant to the 2006 agreement between BSG and Check Velocity. Check Velocity is therefore entitled to summary judgment as a matter of law. 84 Lumber Co., 356 S.W.3d at 383-84.

## III.  Conclusion

The Weight Watchers Collection Services Agreement contained terms and obligations not present in the ECR Agreement and was not a renewal of the ECR Agreement. We affirm the judgment of the trial court awarding summary judgment in favor of Check Velocity. Costs of this appeal are taxed to BSG, LLC, and its surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE