# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 3, 2026 Session

## JACK PIRTLE, IN HIS CAPACITY AS THE EXECUTOR OF THE ESTATE OF MARK A. PIRTLE, DECEASED v. JOHN R. HOWERTON ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 22-CV-2417      Darrell Scarlett, Judge**

_____

### No. M2025-00882-COA-R3-CV

_____

The plaintiff, in his capacity as the executor of the decedent's estate, commenced this action for breach of a stock purchase agreement against the decedent's former business partner and the business that they owned together. The agreement comprised two documents: one requiring an initial lump-sum payment of $1 million, and one requiring payment of "$8,000.00 per month for 96 months and two new automobiles with lease payments or purchase payments not to exceed $1,500.00 per month for 96 months." The decedent also signed a handwritten note in which he agreed to forgive "all debts" if the former business partner honored "all agreements for 1 (one) year after [the decedent's] death." The plaintiff later moved for summary judgment based on evidence that the defendants made only 17 monthly cash payments and only 114 of the vehicle payments. In response, the defendants asserted that they made a lump sum payment of $40,000 "in full satisfaction of the debt" before the decedent's death. The defendants also argued that the debt was forgiven pursuant to the handwritten note. Regardless, the defendants maintained that there was no evidence of missed payments. The trial court granted the motion in part, finding it undisputed that the defendants made only 17 payments. The court also found that the plaintiff was entitled to an award of his attorney's fees and costs under a "Hold Harmless and Indemnity" clause in the purchase agreement. But the court found a dispute of material fact on whether the defendants breached their obligation to make all car payments. At trial, the defendants moved for a directed verdict due to the plaintiff's alleged failure to prove damages. The trial court granted the motion because there was no evidence that the defendants missed any car payments. This appeal followed. We affirm the judgment in all respects except for the award of attorney's fees, which was based on an incorrect interpretation of the contract.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Vacated in Part**

FRANK G. CLEMENT JR., C.J., delivered the opinion of the Court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Richard L. Colbert, Adam O. Knight, and Brian T. Boyd, Franklin, Tennessee, for the appellants, John R. Howerton and H&P, Inc., d/b/a John Howerton Honda.

William T. Ramsey and J. Isaac Sanders, Nashville, Tennessee, for the appellee, Jack Pirtle, in his capacity as the Executor of the Estate of Mark A. Pirtle, Deceased.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Mark Pirtle ("Decedent") and John R. Howerton owned multiple car dealerships, including dealerships in Cookeville, Tennessee, and Shelbyville, Tennessee. In 2011, Decedent and Mr. Howerton formed H&P, Inc., to buy a third dealership in West Virginia.

About three years later, in July 2014, Mr. Howerton and Decedent executed a stock purchase agreement ("the Agreement") whereby Mr. Howerton agreed to buy Decedent's interest in H&P "for the total purchase price of one million dollars ($1,000,000.00)."[1]

The same day, Mr. Howerton and Decedent signed a handwritten document ("the Handwritten Note") that had two sentences:

> In consideration of full payment of John R. Howerton's purchase of Mark A Pirtle's 490 shares of John Howerton Honda, Inc., Pirtle releases Howerton from any debts they may have incurred in past dealership interests.

> In the event of Mark Pirtle's death, John Howerton will honor all agreements for 1 (one) year after death. Then all debts are fulfilled.

Later that month, Decedent and Mr. Howerton signed a third document ("the Addendum"), which provided:

> Howerton Honda, Inc. and John R. Howerton promise to pay Mark A. Pirtle the sum of $8,000.00 per month for 96 months and two new automobiles with lease payments or purchase payments not to exceed

---

[1] The Agreement identifies Mark A. Pirtle as "Seller," John R. Howerton as "Buyer," and H&P as "Corporation." Mr. Howerton, in his capacity as the President of H&P, signed the Agreement to express the corporation's consent to the transaction. The relevant provision states: "Corporation agrees to the aforesaid transfer from [Pirtle] to [Howerton]."

$1,500.00 per month for 96 months for additional payment of Pirtle's 490 shares of the dealership, Howerton Honda, Inc.

After the three agreements noted above had been executed, Decedent transferred his stock to Mr. Howerton, and Mr. Howerton remitted the initial payment of $1 million plus the first monthly payment of $8,000.

Decedent died in October 2022. Two months later, Jack Pirtle, in his capacity as the Executor of the Estate of Mark A. Pirtle ("Plaintiff"), commenced this action by filing a complaint against John R. Howerton and H&P, Inc., d/b/a John Howerton Honda (collectively, "Defendants"). As amended, the Complaint alleged that Defendants made only 16 of the $8,000 payments ("the Cash Payments") and only 95 of the lease payments ("the Vehicle Payments"). In their Answer, Defendants asserted, *inter alia*, that they had either fulfilled their obligations or that their obligations had expired.

One year later, Plaintiff moved for summary judgment on his claims. In an accompanying statement of undisputed material facts, Plaintiff cited evidence that Defendants "made 17 payments of $8,000 pursuant to the Agreement" plus a $40,000 payment in 2020. Thus, Plaintiffs asserted, "[T]he total amount paid by the Defendants pursuant to the Agreement was $176,000, leaving a balance of $592,000 owed pursuant to the [cash-payment provision]." Defendants agreed these facts were undisputed. Yet in an additional statement of undisputed material facts, Defendants cited a declaration from Mr. Howerton, who said that "[t]he additional $40,000 payment made to [Decedent] was intended to be in full satisfaction of all debts."

In his Statement of Undisputed Material Facts, Plaintiff also cited evidence that "Defendants made a total of 104 of the required 192 Vehicle Payments required under the Agreement." Defendants disputed this fact, arguing that they "made **at least** 104 payments." (Emphasis added).

After a hearing, the trial court granted summary judgment to Plaintiff on his claim for the remaining Cash Payments. Based on "the undisputed facts in the record," the court found that Defendants "made a total of 17 out of the required 96 payments of $8,000 to the Decedent" plus "an additional payment of $40,000 in January 2020." Thus, the court awarded $592,000 to Plaintiff for Defendants breach of the cash-payment provision.

The trial court also held that Plaintiff had the right to an award of his attorney's fees and costs under a "HOLD HARMLESS AND INDEMNITY" provision of the Stock Purchase Agreement. But the court found disputed issues of material fact as to whether Defendants fully performed their obligation to make the Vehicle Payments, so the court set a trial on that matter for January 2025.

Meanwhile, Defendants filed a motion to revise the summary judgment. Defendants maintained, *inter alia*, that there was a dispute of material fact as to whether they satisfied

- 3 -

the cash-payment provision because the Handwritten Agreement said that "all debts" would be fulfilled one year after Decedent's death. Defendants averred that this language was ambiguous and, therefore, its meaning presented an issue for trial. Defendants also argued that the trial court erred by construing the Purchase Agreement's indemnity clause as a fee-shifting provision. The trial court denied the motion without elaboration.

At trial, Plaintiff asserted that the Addendum required Defendants to make exactly 192 Vehicle Payments, and he presented evidence that Defendants made 114 payments. At the close of Plaintiff's case-in-chief, Defendants moved for a directed verdict based on Plaintiff's failure to present sufficient evidence of damages. The trial court granted the motion, reasoning that there was no way for the jury to calculate damages without evidence that there were unpaid lease payments.

In its final judgment, the trial court awarded Plaintiff $592,000 in damages, $68,640.50 for attorney's fees and costs, and $94,701.11 in prejudgment interest. This appeal followed.

## ISSUES

The dispositive issues in this appeal are:

(1) Whether Defendants presented evidence that the $40,000 payment was in full satisfaction of all debts.

(2) Whether all debts were forgiven one year after Decedent's death pursuant to the Handwritten Note.

(3) Whether Plaintiff produced evidence that, if uncontroverted, would prove that Defendants made only 17 of the Cash Payments.

(4) Whether Plaintiff presented evidence that, if uncontroverted, would prove that Decedent was injured by Defendant's alleged failure to pay all the Vehicle Payments; and

(5) Whether § 4 the Stock Purchase Agreement governs the award of attorney's fees for the proceeding at bar.

## ANALYSIS

### I. SUMMARY JUDGMENT

Defendants contend that the trial court erred in granting summary judgment on Plaintiff's claim for unpaid Addendum Payments for three reasons: (1) Defendants produced evidence that they completely satisfied their debt by making the $40,000 payment in 2020; (2) Defendants produced evidence that their debt was forgiven one year after

Decedent's death; and (3) Plaintiff did not produce evidence that Defendants missed any of the cash payments.[2]

We review a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). In doing so, we must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.*

Under Rule 56, "if the moving party bears the burden of proof on the challenged claim at trial," the moving party must produce evidence that would entitle it to a directed verdict. *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 888 (Tenn. 2019). To be entitled to a directed verdict, the party who bears the burden of proof at trial must present uncontroverted evidence on every element of their claim. *See Goree v. United Parcel Serv., Inc.*, 490 S.W.3d 413, 429 (Tenn. Ct. App. 2015). When faced with a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but his or her response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06.

Here, Plaintiff moved for summary judgment on his claim for breach of contract, which has three essential elements: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287 (Tenn. Ct. App. Feb. 6, 1998)). Defendants' issues on appeal relate to the last two elements, nonperformance amounting to a breach and damage caused by the breach.

## A. Nonperformance Amounting to a Breach

Defendants argue that Plaintiff was not entitled to judgment as a matter of law because Defendants produced evidence that they satisfied "all debts" by making a $40,000 payment in 2020. In the alternative, Defendants contend that their debt was forgiven one year after Decedent's death pursuant to the Handwritten Note.

---

[2] Defendants also contend that the Addendum is unenforceable because Decedent did not provide consideration for Defendants' promise to make additional payments. We find Defendants waived this issue by not raising it in the trial court. *See Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 511 (Tenn. 2010) ("It is axiomatic that parties will not be permitted to raise issues on appeal that they did not first raise in the trial court.").

## 1. $40,000 Payment

It was undisputed that Defendants paid $40,000 to Decedent in 2020 and that the payment was related to the Cash Payments, but the parties disagreed on how the funds were to be applied. In his Motion for Summary Judgment, Plaintiff alleged that the payment was intended "to pay down the balance that was owed at the time." Defendants did not address this contention in their Response to the Motion for Summary Judgment. But in their Additional Statement of Undisputed Material Facts, Defendants cited an attached declaration from Mr. Howerton in which he said that "[t]he additional $40,000 payment made to [Decedent] was intended to be in full satisfaction of all debt."

We conclude that Mr. Howerton's declaration was conclusory and did not create a genuine issue of material fact. To survive a properly supported motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The phrase "genuine issue" "refers to genuine factual issues, and does not include issues involving legal conclusions to be drawn from the facts." *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 288 (Tenn. Ct. App. 1995) (citation omitted). Moreover, "conclusory affidavits in support of a summary judgment motion are not sufficient to negate an essential element of the plaintiff's claim." *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 582 (Tenn. Ct. App. 2014) (citation omitted). "[A]n affidavit is considered 'conclusory' if it does not indicate a factual basis for the opinion." *Barna v. Seiler*, No. M2008-01573-COA-R3-CV, 2011 WL 1486613, at *7 (Tenn. Ct. App. Apr. 19, 2011).

Thus, in *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978), the nonmovant filed an affidavit opposing summary judgment that said, "Upon the information I have, I believe that all of the aforementioned representations of the plaintiffs were made by them knowing that they were false and they were intended to mislead me." *Id*. at 498. The Court held that this statement failed to meet the requirements of Rule 56 because, *inter alia*, "[t]he sources of the 'information' upon which petitioner based this 'belief' were not revealed." *Id*.

Similarly, in *Mechanics Laundry Service v. Auto Glass Co. of Memphis*, 98 S.W.3d 151 (Tenn. Ct. App. 2002), the court held that two affidavits did not meet Rule 56's requirements when the affidavits made "the bare conclusory statements that 'Melba Morris . . . represented to us that she was the manager and had full authority to enter into any and all agreements. It was also represented to us by her superiors that she had full authority to enter into contracts.'" *Id*. at 157. The court reasoned that "[n]o other details [were] given as to any information acquired by [the affiants] or how it was disseminated by any particular means to anyone in in [the affiants'] organization." *Id*. at 157–58.

In contrast, in *Town of Crossville Housing Authority v. Murphy*, 465 S.W.3d 574 (Tenn. Ct. App. 2014), the court held that two affidavits met the Rule 56 standard when "each identified facts supporting [the affiants'] assertion that they did not have the requisite

intent to make misrepresentations in the transactional documents." *Id*. at 583. In other words, neither affidavit "merely denied having the intent to mislead without further explanation." *Id*.

Here, Mr. Howerton made a vague declaration that "[t]he additional $40,000 payment made to Mark Pirtle was intended to be in full satisfaction of all debts." Mr. Howerton did not give any other details or identify any supporting sources of information. For example, Mr. Howerton did not allege Decedent **agreed** to accept $40,000 in full satisfaction of all debts, only that the payment "was intended to be in full satisfaction of all debts." And Defendants did not mention let alone cite Mr. Howerton's affidavit in their Response to the Motion for Summary Judgment.

Thus, there was no allegation much less evidence that Decedent agreed to forgive "all debts" in consideration for a lump-sum payment of $40,000. Without this evidence, Mr. Howerton's declaration amounts to an unsupported belief as to the legal effect of his payment. This is insufficient to create a genuine issue of material fact. *See Winfree*, 900 S.W.2d at 288.

Moreover, as Plaintiff points out, § 5 of the Agreement has an integration clause that requires all changes to be made in writing:

> This Agreement constitutes the entire agreement between the parties and supersedes any prior written or oral understandings, agreements, or conditions**. No change, modification, amendment, or addition will be valid unless in writing and signed by the party against whom enforcement of any change, modification, amendment, or addition is assigned**. The terms of this Agreement will survive the transfer of Seller's stock to Buyer.

(Emphasis added). So even if Mr. Howerton was basing his declaration on some undisclosed, oral modification, that modification would be unenforceable under the plain terms of the Agreement.

For these reasons, we conclude that Mr. Howerton's affidavit did not preclude entry of summary judgment for Plaintiff.

### 2. Handwritten Note

Even if the $40,000 payment did not satisfy all debts, Defendants contend that their debts were automatically extinguished one year after Decedent's death under the second sentence of the Handwritten Note, which says, "In the event of Mark Pirtle's death, John Howerton will honor all agreements for 1 (one) year after death. Then all debts are fulfilled."

Plaintiff disputes whether the phrase "all debts" included the amounts owed under the Addendum. Even if it did, Plaintiffs contend that the Handwritten Note is of no consequence because Mr. Howerton did not "honor all agreements" during the year after Decedent's death. We agree.

Assuming arguendo that the Handwritten Note applied to the debts at issue, we find no merit to Defendants' contention that those debts were forgiven. This is because the Handwritten Note required Defendants to "honor all agreements" as a condition to forgiveness of the debt, and it was undisputed that Defendants made no payments during the year following Decedent's death.[3]

For these reasons, we conclude that the Handwritten Note did not preclude the entry of summary judgment on Plaintiff's claim for the past-due cash payments.

## B. Damages

The trial court found it undisputed that "Defendants made a total of 17 out of the required 96 payments of $8,000" plus "an additional payment of $40,000 in January 2020." Thus, the court held that Plaintiff was entitled to a judgment in the amount of $592,000 for Defendants' breach. Defendants acknowledge that there was evidence of 17 payments, but they contend that there was a dispute on whether "those 17 payments constituted the 'total' number of payments made."[4] We find no merit to this argument.

Plaintiff had the burden of producing evidence that, if uncontroverted, would prove every element of his claim. *See TWB Architects, Inc.*, 578 S.W.3d at 888. It was undisputed that the Addendum required Defendants to make 96 payments of $8,000, or a total of $768,000. Plaintiff also produced evidence that Defendants made 17 payments of $8,000 plus a lump-sum payment of $40,000, or a total of $176,000. This evidence, if uncontroverted, would be enough for a rational trier of fact to find that Defendants owed $592,000.

---

[3] "[T]he presence of a condition is usually signalled by a conditional word or phrase such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as,' and 'subject to.'" *Harlan v. Hardaway*, 796 S.W.2d 953, 958 (Tenn. Ct. App. 1990) (citing *Cobb v. Gross*, 354 S.E.2d 573, 574 (S.C. Ct. App. 1987); 5 S. Williston, *A Treatise on the Law of Contracts* § 671 (3d ed. 1961); 3A A. Corbin, *Corbin on Contracts* § 639 (1960)). The language at issue here states, "In the event of Mark Pirtle's death, John Howerton will honor all agreements for 1 (one) year after death. **Then** all debts are fulfilled." (Emphasis added).

[4] Plaintiff contends that Defendants waived this issue by not raising it in the trial court. We disagree. On pages 3 to 4 of Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment, Defendants asserted that Plaintiff's evidence failed to show that Defendants failed to pay all 96 of the Addendum Payments.

Thus, the burden shifted to Defendant to "demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in [their] favor.'" *See TWB Architects, Inc.*, 578 S.W.3d at 889 (quoting *Rye*, 477 S.W.3d at 265). In other words, Defendants had to produce evidence that they paid more than $176,000. Instead of producing this evidence, Defendants essentially claimed that there *could have been* more payments. That assertion did not create a dispute of material fact.

As our Supreme Court has explained,

> "When a motion for summary judgment is made and . . . supported as provided in Tennessee Rule 56," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of its pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586 (1986). The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.

*Wallis v. Brainerd Baptist Church*, 509 S.W.3d 886, 896 (Tenn. 2016) (citation modified).

Defendants' contention that there could have been more payments simply raises "metaphysical doubt as to the material facts." *See id.* Thus, we find Defendants are not entitled to relief on this ground.

## II. DIRECTED VERDICT

Next, we turn to Plaintiff's contention that the trial court erred by granting Defendants' Motion for Directed Verdict on Plaintiff's claim for breach of the Vehicle Payments provision in the Addendum.[5] The court granted the motion because there was "no proof of damages whatsoever." But Plaintiff contends that there was evidence of

---

[5] Plaintiff also argues that the trial court erred by holding "that Plaintiff was required to prove a separate breach of the Vehicle Payments Provision" and by determining "that Plaintiff was not entitled to seek damages on the entire contract at the time of the Defendants' prior breach, and that 'prospective' and 'future' damages were not available to Plaintiff." But Plaintiff does not cite the record to show where the trial court made these determinations. *See* Tenn. R. App. P. 27(a)(7) (requiring an argument that includes "citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on"); Tenn. Ct. App. R. 6(b) (requiring "a specific reference" to the place in the record where the challenged action of the trial court may be found). Regardless, the court dismissed Plaintiff's claim based solely on a finding that there was "no proof of damages." *See Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 324 n.6 (Tenn. 2021) ("It is well settled that trial courts speak through their written orders . . . .").

damages because Defendants admitted in the Amended Answer that the Addendum "required a total of 192" payments, and it was undisputed that Defendants made only 114 payments. Thus, according to Defendants, there was evidence on which the jury could make a reasonable calculation of damages.

A trial court's decision on a motion for directed verdict is reviewed de novo with no presumption of correctness. *Cortez v. Alutech, Inc.*, 941 S.W.2d 891, 893 (Tenn. Ct. App. 1996) (citing *White v. Methodist Hosp. S.*, 844 S.W.2d 642 (Tenn. Ct. App. 1992)).

## A. Admission

To begin, we disagree that Defendants conclusively admitted that the Addendum "required a total of 192 payments." In general, "admissions in pleadings are judicial (conclusive) admissions, conclusive against the pleader until withdrawn or amended." *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.*, 642 S.W.2d 151 (Tenn. Ct. App. 1982). But "this principle extends to admissions in pleadings regarding issues of *fact*." *Sakaan v. Fedex Corp., Inc.*, No. W2016-00648-COA-R3-CV, 2016 WL 7396050, at *4 (Tenn. Ct. App. Dec. 21, 2016) (citing *John P. Saad & Sons, Inc.*, 642 S.W.2d at 152). "**A party is not ordinarily bound by admissions or averments of legal conclusions**." *Id*. (emphasis added) (quoting *Nichols v. Blocker*, No. 87-110-II, 1988 WL 39569, at *2 (Tenn. Ct. App. Apr. 29, 1988)).

Whether or not the Addendum "required a total of 192 payments" is a question of law. *See 101 Constr. Co. v. Hammet*, 603 S.W.3d 786, 794–95 (Tenn. Ct. App. 2019) (the meaning of a contract "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for the jury to decide" (quoting *Planters Gin Co. v. Fed. Compress & Warehouse, Co.*, 78 S.W.3d 885, 889–90 (Tenn. 2002))). Thus, Defendants were not bound by their "admission." *See Sakaan*, 2016 WL 7396050, at *4. Moreover, having considered the Addendum's language, we conclude that it did not require a specific number of lease payments.

## B. Vehicle Payments Provision

When interpreting a contract, the central principle is "to ascertain and give effect to the intent of the contracting parties." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). A court's initial task is to "determine whether the contract language at issue is ambiguous." *BSG, LLC v. Check Velocity, Inc.*, 395 S.W.3d 90, 93 (Tenn. 2012). If so, the court must "interpret the contract as written according to its plain terms, 'as those terms are ordinarily understood.'" *Pharma Conf. Educ., Inc. v. State*, 703 S.W.3d 305, 311 (Tenn. 2024). But "if the terms are ambiguous in that they are 'susceptible to more than one reasonable interpretation,' we must apply other established rules of construction to aid in determining the contracting parties' intent." *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659

(Tenn. 2013) (quoting *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). "The meaning of the contract becomes a question of fact only if an ambiguity remains after we have applied the appropriate rules of construction." *Id.*

The Addendum provides in its entirety as follows:

> Howerton Honda, Inc. and John R. Howerton promise to pay Mark A. Pirtle the sum of $8,000.00 per month for 96 months and two new automobiles with lease payments or purchase payments not to exceed $1,500.00 per month for 96 months for additional payment of Pirtle's 490 share of the dealership, Howerton Honda, Inc. The Vehicles will also be insured by Howerton Honda with full coverage.

We construe this language as meaning that Defendants would "pay . . . [for] two new automobiles"—not that Defendants would pay 96 payments. The phrase, "with lease payments or purchase payments not to exceed $1,500.00 per month for 96 months," simply limits the amount and duration of Defendants' obligation.

We would reach the same conclusion even if we found the above language ambiguous. Under the rule of practical construction, "the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the declarations of the parties may be considered." *Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 693 (quoting *Hamblen Cnty. v. City of Morristown*, 656 S.W.2d 331, 335 (Tenn. 1983)).

Here, Mr. Howerton testified that Decedent would buy or lease the vehicles and then tell Mr. Howerton how much the payments were:

Q. Okay. So when Mr. Pirtle went to a dealership, he liked Mercedes, he went to Mercedes and he decided to get a lease, did he just simply call you and say this is what the payment is?

A. Yes.

Q. And you paid it?

A. Yes.

. . . . .

Q. . . . What if there was nothing to pay that month? What then?

A. There was nothing to pay.

Q. Okay. Well, would you write Mr. Pirtle a check for $1,500?

A. No.

. . .

Q. Okay. Did you have any idea when a lease would be up or they would go trade a car in? Did you have any control over that?

A. No.

Q. Okay. All right. What if there was no second vehicle to pay for? Would you . . . strike check to Mr. Pirtle?

A. No.

Q. Okay. So I just want to be very clear for the jury. If there was a month when you didn't have an obligation, so zero was actually owed to Mercedes-Benz or BMW, you didn't write a check, did you?

A. No.

Q. Has this been your course of conduct the entire time?

A. Absolutely.

. . .

Q. We've talked about Mr. Pirtle liked cars. You know, he would stay in a car for about 18 months, maybe swap it out at two years, so on and so forth. And every time he did that, he notified you, hey, here is the new payment. Did you pay that?

A. Yes.

Plaintiff presented no evidence to contradict this testimony, which was corroborated by documentary evidence that H&P made payments directly to the lessors or lenders rather than to Decedent.

Thus—according to the construction placed on the Addendum by the parties—Defendants' duty was to pay if and when Decedent or his wife incurred an expense for the purchase or lease of two new vehicles up to a maximum of $1,500 per month.[6] But, absent

---

[6] The parties disputed whether the $1,500 cap was per vehicle or for both vehicles together. We need not resolve that issue because, either way, Plaintiff presented no evidence that there were unpaid lease or purchase payments.

a monthly vehicular lease or purchase expense, there was no requirement for Defendants to pay $1,500 per month, or any amount.

Accordingly, it was incumbent on Plaintiff to present evidence that Decedent or his wife incurred lease or purchase expenses that Defendants failed to pay. But Plaintiff presented no such evidence. Instead, Plaintiff simply presented evidence that Defendants made 114 lease or purchase payments. This was insufficient to show the existence of damages much less the amount.

For these reasons, we affirm the trial court's decision to direct a verdict dismissing this claim.

## III. ATTORNEY'S FEES

The court found that Plaintiff was "entitled to recover attorneys' fees and other costs relating to this action[ ] under the plain language of Section Four of the Agreement." Defendants argue this was error because § 4 is an indemnity clause, not a fee-shifting provision.

Plaintiff disagrees, insisting the trial court's ruling was correct. Moreover, Plaintiff contends that Defendants waived this issue by not timely raising it in response to Plaintiff's Motion for Partial Summary Judgment. Defendants counter by asserting that they preserved the issue by raising it in their Motion to Revise the order. We will discuss the waiver issue first.

### A. Waiver

As Plaintiff correctly states, Defendants did not address Plaintiff's request for attorney's fees in their Response to Plaintiff's Motion for Partial Summary Judgment. Instead, Defendants addressed it in their Motion to Revise.

Generally, "[i]f an issue 'is not properly raised in the trial court, it will not be considered on appeal.'" *Reid v. State*, 9 S.W.3d 788, 796 (Tenn. Ct. App. 1999) (quoting *Harlan*, 796 S.W.2d at 957). There is no bright-line rule for determining whether an issue was "properly raised." *See First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 401 (Tenn. 2015). But it is well established that issues must be "timely brought to the attention of the trial court." *Mallicoat v. Poynter*, 722 S.W.2d 681, 682 (Tenn. Ct. App. 1986). As the Tennessee Supreme Court has observed, "[T]here is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001).

Waiting until "the last minute" to raise an issue deprives the opposing party and the trial court of notice and the opportunity to properly address the issue. For example, in *Beacon4, LLC v. I & L Investments, LLC*, 514 S.W.3d 153 (Tenn. Ct. App. 2016), we held that an appellant waived an issue by not raising it in the trial court until after "the

presentation of all proof and argument." *Id*. at 171, *overruled on other grounds by In re Mattie L.*, 618 S.W.3d 335 (Tenn. 2021). We reasoned that the trial court did not have an opportunity to "view the evidence, presented over five days of trial and in the span of two months' time, through the lens of the [newly alleged] statutory violation" and that the opposing party lacked notice that it "would have to defend against this allegation." *Id*. at 172. Similarly, in *Induction Technologies, Inc. v. Justus*, 295 S.W.3d 264, (Tenn. Ct. App. 2008), we held that an appellant waived an issue concerning the applicability of a statute when presented "for the first time in a post-trial motion to alter or amend." *Id*. at 268–69; *cf. Woodroof v. Fisher*, 180 S.W.3d 542, 550 (Tenn. Ct. App. 2005) (holding that "fundamental fairness" supported the denial of motion to alter or amend filed "*after* six days of hearings spread over a period of some sixteen months, after numerous witnesses had testified and more than a thousand pages of their testimony had been transcribed, and after the court and opposing litigants had been repeatedly told that 'custody isn't an issue in this case'").

Here, unlike the appellants in *Beacon4* and *Induction Technologies*, Defendants presented their legal arguments concerning § 4 in their Motion to Revise the order awarding attorney's fees six months before trial. Thus, the issue was not raised "at the last minute." Moreover, Plaintiff filed a response to Defendants' Motion to Revise, arguing waiver and defending the merits of the court's earlier decision. Consequently, Plaintiff was not deprived of the opportunity to address the legal issue. And in its Order Denying Defendants' Motion to Revise, the court noted that it had heard the motion, reviewed the filings, and considered the arguments of counsel. Thus, none of the concerns in *Beacon4* and *Induction Technologies* are implicated in the present case.

Based on the foregoing, we conclude that Defendants preserved their arguments concerning the applicability of § 4 by raising them in their Motion to Revise. Thus, we will proceed with reviewing the merits of the trial court's decision.

## B. Section 4

Tennessee adheres to the American Rule, which states that a party to a civil action may not recover its attorney's fees without a statute or contract allowing for this recovery. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). When reviewing a request for attorney's fees under a contract, our courts are to engage in the following analysis:

> Courts reviewing requests for fees pursuant to a [contract's] fee provision should first determine whether the parties have a valid and enforceable [contract] that governs the award of attorney's fees for the proceeding at bar. If so, our courts must look to the actual text of the provision and determine whether the provision is mandatory and applicable. If so, the [contract] governs the award of fees, and our courts must enforce the parties' contract.

- 14 -

*Id.* at 478–79 (citation modified). But "[i]n the context of contract interpretation, Tennessee allows an exception to the American rule only when a contract *specifically or expressly* provides for the recovery of attorney fees." *Id.* at 309.

Turning to the first step of the analysis, we conclude that § 4 does not specifically and expressly govern the award of attorney's fees for the proceeding at bar. Section 4 is titled "HOLD HARMLESS AND INDEMNITY" and provides:

> Buyer and Corporation agree to indemnify, defend and hold harmless Seller from and against any and all losses, damages, liabilities and expenses, including, without limitation, legal fees and court costs, to which Seller may become subject as the result of:
>
>> Any financial obligation of Buyer or Corporation incurred prior to or after the execution of this Agreement;
>>
>> Any and all loss or damage resulting to Seller by reason of any claim, debt, liability, or obligation of the Buyer or Corporation; and
>>
>> Any and all acts, suits, proceedings, demands, assessments, judgments, reasonable attorneys' fees, costs and expenses incident to any of the foregoing.

We agree with Defendants that Plaintiff had no right to an award of his attorney's fees under this section because it does not specifically and expressly provide for attorneys' fees in the case of an interparty claim for breach of contract. *See Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 705 (concluding that similarly worded provision was not "sufficiently specific to apply to the recovery of attorney fees in [an] interparty lawsuit").

For this reason, we respectfully disagree with the trial court's decision to award Plaintiff his attorney's fees and costs. Accordingly, we vacate that part of the court's judgment.

## IN CONCLUSION

Based on the foregoing, we affirm the grant of summary judgment on Plaintiff's claim for breach of the $8,000 payment provision and the grant of a directed verdict on Plaintiff's claim for breach of the Addendum's Vehicle Payments provision. We vacate the award of attorney's fees and costs, and this matter is remanded with costs of appeal assessed one-half against appellants, John R. Howerton and H&P, Inc., d/b/a John Howerton Honda, and one-half against appellee, Jack Pirtle, in his capacity as the Executor of the Estate of Mark A. Pirtle, Deceased.

_____
FRANK G. CLEMENT JR., C.J.